PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JACK WALTON,                           )       CASE NO. 3:09CV2869
                                       )
                Plaintiff,             )
                                       )
        v.                             )
                                       )       JUDGE BENITA Y. PEARSON
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
                Defendant.             )       **MEMORANDUM AND ORDER**

        Plaintiff Jack Walton ("Walton") seeks judicial review of the Social Security

Administration's ("Agency" or the "Commissioner") final decision denying his applications for

Disability Insurance Benefits and Supplemental Security Income ("benefits"), pursuant to 42

U.S.C. § 405(g).

        After reviewing the administrative record and the applicable legal standards, the Court

finds that the Administrative Law Judge's ("ALJ") decision, as written, is not based upon proper

legal standards or supported by substantial evidence.  Accordingly, the Court reverses and

remands the matter, pursuant to Sentence Four of 42 U.S.C. § 405(g), to permit the Agency to

fully articulate the reasons for its decision and for further consideration of Walton's claims in a

manner consistent with this opinion.

## I.  Overview

        Walton, a former home repair salesman, alleged disability due to heart, arm, and shoulder

problems, along with arthritis in his neck.  (Tr. 24, 73.)  At fifty-six years old, Walton, a high

(3:09CV2869)

school graduate, qualified as a "person of advanced age" on his alleged disability onset date.[1]

Although the ALJ found that Walton had several severe physical impairments, he determined

that Walton also had physical impairments that were not severe.  (Tr. 22.)  Ultimately, the ALJ

determined Walton "has not been under a disability, as defined in the Social Security Act"

because he: (1) "did not have an impairment or combination of impairments that met or

medically equaled one of the listed impairments;" (2) "has the residual functional capacity to

perform the full range of light work;" and (3) was "capable of performing past relevant work as a

salesman."  (Tr. 23, 24.)

## II.  Procedural History

Alleging a disability onset date of July 1, 2005, Walton filed applications for benefits on

December 12, 2005.  (Tr. 19, 44, 47.)  The Agency denied Walton's claims initially and upon

reconsideration.  On January 31, 2007, Walton requested an administrative hearing which was

held on January 20, 2009; Walton and his counsel were present.[2]  (Tr. 34.)  After the ALJ denied

him benefits, Walton requested administrative review of the hearing decision.  The Appeals

Council denied Walton's request for review, making the ALJ's February 2, 2009 decision the

final Agency decision.  Seeking judicial review of the Agency's final decision, Walton timely

filed a Complaint presenting the following issues:

(1)      Whether the ALJ failed to consider all of Plaintiff's severe impairments;

---

[1]  *See* 20 C.F.R. § 404.1563(c).

[2]  The ALJ conducted the hearing *via* videoconferencing, pursuant to 20 C.F.R.
404.936(c).

(3:09CV2869)

> (2)    Whether the ALJ's evaluation of Plaintiff's subjective limitations was appropriate and legally sufficient; and
>
> (3)    Whether material new evidence warrants remand.

ECF No. 14 at 1.

### III.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971).  Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.  "Substantial evidence" is "more than a scintilla of evidence, but less than preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528. 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on

(3:09CV2869)

the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d at 545 (6th Cir. 1986). The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Id.* The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### IV. Standard for Establishing Disability

To establish disability under the Act, a claimant must show that he is unable to engage in substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation. If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends. 20 C.F.R. § 404.1520(a). At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit. At Step Two, the ALJ considers the medical severity of

-4-

(3:09CV2869)

the claimant's impairments.  A claimant is not disabled if she does not have a severe medically

determinable physical or mental impairment that also meets the duration requirement in 20

C.F.R. § 404.1509, or a combination of impairments that are severe and meet the duration

requirement.  At Step Three, the ALJ determines whether the claimant's impairment meets or

equals one of the criteria of an impairment listed in Appendix 1 and meets the duration

requirement.  *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1.  A claimant is disabled if she has

an impairment that meets the listing and the duration requirement.

Before considering the fourth step, the ALJ must determine the claimant's residual

functional capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a

sustained basis despite limitations from impairments.  At Step Four, the ALJ considers whether

the claimant's RFC permits her to perform past relevant work.

At the final step, Step Five, the ALJ considers the claimant's RFC, age, education, and

work experience to determine whether the claimant may work.  Even if the claimant's

impairment does prevent her from doing her past relevant work, the claimant is not disabled if

other work exists in the national economy that she can perform.  *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing

five-step evaluation).

The claimant bears the burden of proof at Steps One through Four.  *Warner v. Comm'r of*

*Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir.

1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of

disability.").  This means that claimant bears the ultimate burden of proof regarding the issues of

-5-

(3:09CV2869)

disability and the establishment of a disability onset date.  *See* 20 C.F.R. § 404.1512(a) ("In

general, you have to prove to us that you are blind or disabled");  *McClanahan v. Comm'r of Soc.*

*Sec.*, 474 F.3d 830, 836 (6th Cir. 2006).

At Step Five of the sequential evaluation, the burden shifts to the Commissioner to

identify "a significant number of jobs in the economy that accommodate the claimant's residual

functional capacity (determined at step four) and vocational profile."  *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482

U.S. 137, 146 n.5 (1987) ("[T]he Secretary bears the burden of proof at step five, which

determines whether the claimant is able to perform work available in the national economy.").

## V.  Analysis

Walton requests remand pursuant to both Sentence Four and Six of 42 U.S.C. § 405(g).

Pursuant to Sentence Four, Walton argues for remand alleging the ALJ erred by:  (1) failing to

recognize all of his severe impairments in determining his RFC; and (2) "erroneously us[ing] a

proposed conflict between [Walton's] residual functional [capacity] and [ ] Walton's statements

to support [the ALJ's] decision that [Walton's] testimony was not credible."  ECF No. 14 at 10,

13.  Under Sentence Four, the Court is authorized to enter "a judgment affirming, modifying, or

reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

*Sturgeon v. Astrue*, No. 1:08CV0510, 2009 U.S. Dist. LEXIS 85287, at *44 (S.D. Ohio June 10,

2009).

Walton seeks remand pursuant to Sentence Six due to alleged new and  material

additional medical evidence that was not incorporated in the record prior to his hearing for good

(3:09CV2869)

cause.  ECF No. 14 at 15.  In a Sentence Six remand, the Court

> does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination.  Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding.

*Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

### A. The ALJ's Failure to Label Additional Conditions "Severe Impairments" at Step Two of the Sequential Evaluation is Harmless Error, at best.

Walton alleges that, at Step Two of the sequential evaluation, the ALJ erroneously failed to find that Walton's tremors, lightheadedness, depression, and insomnia constituted severe impairments, in addition to other impairments the ALJ found to be severe.  ECF No. 14 at 10-12.

The determination of the severity of a claimant's impairment is "a *de minimis* hurdle in the disability determination process" meant to expedite the just settlement of claims by "screen[ing] out totally groundless claims."  *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir.2008) (internal quotations omitted).  "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience."  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  If a claimant does not have at least one severe impairment or combination of impairments, he is not disabled and the evaluation stops at Step Two.  (Tr. 20.)

Walton's argument that the ALJ erred in failing to categorize additional complaints as "severe" at Step Two is without merit.  When an ALJ considers all of a claimant's impairments, post-Step Two, an ALJ's failure to find additional severe impairments at Step Two does not

-7-

(3:09CV2869)

constitute reversible error.  *See* *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also* *Riepen v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 414, 415 (6th Cir. 2006); *Johnson v. Astrue*, No. 3:07-CV-96, 2008 WL 746686, at *2 (E.D. Tenn. March 18, 2008) (because the ALJ found plaintiff had severe impairments and moved on to the remaining steps of the sequential analysis, determination of whether any of the plaintiff's other impairments were severe was not necessary).  Therefore, even if the ALJ erred when he did not identify Walton's additional physical ailments as severe impairments, this error is not reversible if the ALJ nevertheless specifically considered these impairments along with Walton's other impairments in the remaining steps of the sequential evaluation.

The ALJ found that Walton had at least two severe impairments--degenerative disc disease and heart disorder.[3]  From Step Two forward, the ALJ was required to consider both Walton's severe and non-severe impairments in the remaining steps of the sequential analysis.  The record reflects that the ALJ gave the appropriate consideration to both Walton's severe and non-severe impairments post-Step Two.  *Anthony*, 266 Fed. Appx. at 457 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d at 244 (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe).

Accordingly, even assuming that Walton is correct--that other impairments he suffered should have been categorized as "severe"--any error by the ALJ was harmless.

---

[3]  Because the ALJ found that Walton had at least one severe impairment, Walton cleared Step Two of the evaluation.

-8-

(3:09CV2869)

**B.    The ALJ's Failure to Consider the Medical Opinions of Walton's Primary and Treating Physicians is Reversible Error.**

**1. Legal Standard**

After Step Three and before determining whether the claimant can perform her past work at Step Four of the Agency's sequential evaluation, the ALJ is required to assess a claimant's RFC.  20 C.F.R. § 404.1520(e)  The RFC finding is an administrative assessment of "what an individual can still do despite his or her limitations."  *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 61 Fed. Reg. 34474, 34475 (1996).  The ALJ's determination of a claimant's RFC is a legal decision rather than a medical one.  *See* 20 C.F.R. § 404.1527(e); SSR 96-5p, 61 Fed. Reg. 34471, 34474 (1996).  As such, the final responsibility for deciding issues such as RFC is reserved to the Commissioner. 20 C.F.R. § 404.1546.

When determining a claimant's RFC, an ALJ must consider all relevant evidence in the case record, 20 C.F.R. 404.1545(a)(1), including both a claimant's severe and non-severe impairments.  20 C.F.R. 404.1545(a)(2).  Particularly, when assessing a claimant's mental capacity, an ALJ must evaluate the severity of a claimant's mental limitations and will decide how those limitations affect the claimant's capacity to work.  20 C.F.R. 404.1545(c) ("When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.").

When an error, such as an ALJ's failure to properly evaluate objective medical evidence, occurs in the sequential analysis before the ALJ has made a RFC determination, the RFC determination must be redone.  Whether substantial evidence supports the ALJ's decision is

(3:09CV2869)

beside the point. "[T]o recognize substantial evidence as a defense to non-compliance with §

1527(d)(2)[ ] would afford the Commissioner the ability [to] violate the regulation with impunity

and render the protections promised therein illusory." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 546 (6th Cir. 2004).

## 2.  The Standard as Applied to the ALJ's RFC Determination

Contrary to Agency regulations, in the instant case, the ALJ failed to acknowledge and

give appropriate consideration to the medical opinion of Walton's primary care physician, Dr.

Mehl and treating physician, Dr. Kotlyarevsky.[4]  The Court declines to classify the ALJ's

omission as a harmless error.  This error, alone, dictates reversal and remand as it is contrary to

the Agency's self-imposed treating physician rule.  Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4

("Treating source medical opinions are still entitled to deference and must be weighed using all

of the factors provided in 20 CFR 404.1527 . . . .").

In assessing the medical evidence provided in support of a claim for disability benefits,

there are certain governing standards or rules that an ALJ must follow.  Among these is the

treating physician rule which requires the ALJ to give a treating source opinion "controlling

weight" if the treating source opinion is "well-supported by medically acceptable clinical and

---

[4]  A treating source, accorded the most deference by the Agency, has not only examined
the claimant but also has an "ongoing treatment relationship," consistent with accepted medical
practice.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  A physician
qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted
medical practice for the type of treatment and/or evaluation required for [the] medical condition."
20 C.F.R. § 404.1502.  In the instant matter, Drs. Mehl and Kotlyarevsky qualify as treating
physicians and, as such, are acceptable medical sources.  (Tr. 99-108, 110, 183, 189, 190, 192,
194, 200-01.)

-10-

(3:09CV2869)

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

[the] case record." 20 C.F.R. § 404.1527(d)(2).  An ALJ's decision to grant a treating

physician's medical opinion less than controlling weight must be accompanied by "good

reasons" that are both: (1) supported by the evidence in the case record, and (2) sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight.  SSR. 96-2p.  The ALJ's failure to

follow the procedural requirement "of identifying the reasons for discounting the opinion and for

explaining precisely how those reasons affected the weight accorded the opinions denotes a lack

of substantial evidence, even where the conclusion of the ALJ may be justified based upon the

record." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007).

In this case, the ALJ neither articulated the nature of Drs. Mehl and Kotlyarevsky's

treating relationship with Walton or recognized their medical opinions in any way obvious to this

reviewer.  Specifically, Walton contends that the ALJ erred in failing to accept, or even mention,

the findings and observations of Dr. Mehl, primary physician, and Dr. Kotlyarevsky, treating

physician, regarding Walton's lightheadedness, tremors, and depression.  ECF No. 14 at 11-12.

The Commissioner responds that the ALJ has not erred because lightheadedness and

tremors are symptoms of Walton's heart disease, and the ALJ's discussion of Walton's severe

heart disorder "related to" lightheadedness and tremors.  ECF No. 16 at 14-15.  The

Commissioner further opined that even though the ALJ's report does not mention Walton's

depression and insomnia, the ALJ has not committed an error because the evidence that speaks to

this issue is weak, and Walton fails to address "the multiple clinical examinations indicating that

(3:09CV2869)

he was not depressed." ECF No. 16 at 15-14.

The ALJ's failure to acknowledge the opinions of Drs. Mehl and Kotlyarevsky is contrary the Agency's treating physician rule.[5] As important, this error renders the undersigned unable to engage in a meaningful review because the ALJ's decision is not sufficiently specific to make clear that the ALJ realized the nature and extent of both physicians' treating relationship with Walton and, as a result, formulated an accurate and comprehensive RFC.[6] *See Fisk v. Astrue, 253 Fed. Appx. 580, 586 (6th Cir. 2007)* (holding remand required when ALJ insufficiently accounted for medical opinion of claimant's treating physician).

Due to the error described above, the ALJ's analysis of the medical evidence and ultimate determinations of severe impairments and the subsequent RFC must be redone to reflect the ALJ's consideration as to the nature and extent of Drs. Mehl and Kotlyarevsky's findings. Therefore, a reversal and remand is necessary.[7]

---

[5] That the claimant bears the burden of proving her disability does not absolve the ALJ of the responsibility for properly evaluating the medical evidence presented.

[6] An additional procedural requirement of the treating physician rule is that the ALJ must provide "good reasons" for discounting a treating physician's opinion with reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p; *see also Wilson*, 378 F.3d at 544. The significance of this notice requirement is that it ensures that a claimant denied benefits receives fair process. An ALJ's failure to follow this requirement of providing good reasons "for explaining precisely how those reasons affected the weight accorded the [physician's] opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (*citing Wilson*, 378 F.3d at 544).

[7] Redetermining Walton's severe impairments and RFC will necessarily require a re-evaluation of Walton's credibility. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (explaining the RFC circumscribes "the claimant's residual abilities or what a

(3:09CV2869)

## C.  Sentence Six Remand

Walton has requested a Sentence Six remand to permit the Agency to review "new" evidence that the Commissioner argues is duplicative, overlapping in time and repetitive of that already considered and not material.

Under Sentence Six of 42 U.S.C. § 405(g), "[t]he court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  A Sentence Six remand requires "the reopening of the administrative record so that the Commissioner may consider 'new and material evidence that for good cause was not previously presented to' the Commissioner." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir.2006) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir.1994)).  To warrant a Sentence Six remand, the party seeking remand must show:  (1) "that the evidence at issue is both 'new' and 'material,'" and (2) "that there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'"  42 U.S.C. § 405(g).

---

claimant can do, not what maladies a claimant suffers from–though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities").  "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007).  Without deciding the issue, the order for remand will require the ALJ to make clear that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005).  "Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective evidence alone," 20 C.F.R. § 404.1529 requires that careful consideration be given to relevant additional information summarized in the factors identified in 20 C.F.R. § 404.1529(c)(3).

(3:09CV2869)

A claimant will meet his burden upon showing that such evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster, 279 F.3d at 357* (citing *Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)*).  A claimant must also show that such evidence is "material" by demonstrating "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster, 279 F.3d at 357* (citing *Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988)*).  A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.  *Foster, 279 F.3d at 357* (citing *Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (1984)*).

The Sixth Circuit has observed that "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin., 88 Fed. Appx. 841, 845 (6th Cir. 2004)*.  A claimant must provide medical evidence of his impairments "during the time you say that [he is] disabled." 20 C.F.R. § 404.1512(c).  The crucial date in a social security case is the "date [that] claimant's insured status expired." *Barnett v. Sec'y of Health & Human Servs., No. 86-3111, 1987 WL 36614, at *3 (6th Cir. 1987)*.  Medical evidence dated after a claimant's expiration of  insured status is only relevant to a disability determination where the evidence "relates back" to the claimant's limitations prior to the date last insured.  *Id.*  The related back evidence is relevant only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date.  *See* 20 C.F.R. § 416.945(a)(1) ("Your impairment(s), and any related symptoms, such as pain, may cause physical

-14-

(3:09CV2869)

and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations.").

Based upon this guidance and for the reasons provided below, the Court denies Walton's request for a Sentence Six remand. The evidence submitted for consideration is discussed below.

### 1. March 14, 2008 Evidence is Not "New"

At issue is a one-page functional capacity assessment prepared by Dr. Maaieh on March 14, 2008. ECF No. 14 at 7. Dr. Maaieh's assessment described Walton's current diagnoses, medications, and instructions to take a stress test as well as undergo a cardiac catheterization. (Tr. 282.)

Walton has failed to meet his burden of showing that the evidence is "new" (*i.e.*, not in existence or available at the time of the January 2009 proceeding) and establishing good cause for not incorporating such evidence in the January 2009 proceeding or making it available in advance of the ALJ issuing his February 2, 2009 decision. *See Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 484-85 (6th Cir. 2006)*.

### 2. Dr. Kattar's January 23, 2009 Evidence is Largely Cumulative of Dr. Kattar's June 6, 2008 Evidence Present in the Record

Walton argues that Dr. Kattar's assessment on January 23, 2009, is material because the report shows that Walton is still experiencing the same symptoms and refutes the ALJ's finding that his "atrial fibrillation is well controlled." ECF No. 14 at 17. Dr. Kattar's January 23, 2009 assessment is, however, largely cumulative of his previous assessment dated June 6, 2008, which is a part of the record, as shown below.

The Sixth Circuit has held that "evidence [] largely cumulative of evidence and opinions

-15-

(3:09CV2869)

already present in the record" need not be considered for remand.  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005).  This notion holds true because "a sentence six remand is appropriate only if the plaintiff can show new substantive evidence that might have changed the outcome of the prior proceeding[;]" and if the record presently reflects the same evidence and opinions at the time of the proceeding, then it is not probable that the "new" evidence would have changed the outcome.  *Allen*, 561 F.3d at 654.  In the instant matter, Walton's alleged new evidence concerning Dr. Kattar's report on January 23, 2009, is already present in the record.

| Dr. Kattar's January 23, 2009 report includes: | Dr. Kattar's June, 6, 2008 report includes: |
|---|---|
| (1)   History of present illness (*i.e.*, hypertension, angina pectoris, and atrial fibrillation) discussing a normal "cath" in 2005 and a 2005 tilt-table neurocardigenic syncope diagnosis; | (1)   History of present illness (*i.e.*, coronary artery disease, hypertension, mitral valve prolapse, and atrial fibrillation); discussing a normal "cath" in 2005, and "no coronary artery disease to speak of;" |
| (2)   Current diagnoses (*i.e.*, hypertension-essential (benign), angina poctoris, CAD, mitral valve-prolapse, arrhythmia-atrial fibrillation, and pacemaker/cardiac); | (2)   Current diagnoses (*i.e.*, hypertension-essential (benign), angina poctoris, CAD, mitral valve-prolapse, arrhythmia-atrial fibrillation, and pacemaker/cardiac); |
| (3)   Medications (*i.e.*, warfarin sodium, citalopram hydrobromide, metformin hydrochloride, lipitor, atenolol, and digoxin); and | (3)   Medications (*i.e.*, warfarin sodium, citalopram hydrobromide, and atenolol); and |
| (4)   Impression/Plan discussing atrial fibrillation and tachybrady syndrome, along with commenting on whether "it is just [the] loss of atrial kick over the years that has left him the way he is feeling." | (4)   Impression/Plan discussing "[v]ague chest pain . . . . I wonder if it is related to rapid atrial arrhythmias.  Prior catheterization, normal." |
| (Tr. 311.) | (Tr. 281.). |

Given that Dr. Kattar's January 23, 2009 assessment is largely cumulative of his previous

-16-

(3:09CV2869)

assessment on June 6, 2008,  Walton has failed to demonstrate that he has met his burden

required for a Sentence Six remand.

### 3. Dr. Maloney's February 12, 2009 Evidence is Largely Cumulative of Dr. Maloney's October 25, 2008 Evidence Which is Present in the Record

Walton's contention that Dr. James Maloney's February 12, 2009, report is new evidence

is belied by the record.  ECF No. 14 at 7.  Rather, Dr. Maloney's February 12, 2009 assessment is

"largely cumulative of [Dr. Maloney's] evidence and opinions already present in the record"

issued on October 25, 2008.  *Longworth*, 402 F.3d at 598.  Walton explains that Dr. Maloney's

2009 report includes "chronic atrial fibrillation and tachy-brady syndrome [] managed with a

VVIR pacemaker . . . depression and anxiety, [and] noted that the Plaintiff had [] counseling on

and off for years . . . opin[ing] that 'these psychological problems along with the atrial fibrillation

have played a role in his ability to try and have employment."  ECF No. 14 at 7.  In pertinent part,

Dr. Maloney's October 25, 2008, report includes a principal diagnosis of "atrial fibrillation with

rapid ventricular response," a secondary diagnosis of "tachybrady syndrome, status post VVI

pacemaker in 2005 . . . ."  (Tr. 202.)  Both assessments also discuss Walton's: cigarette habit,

medications, history of alcohol abuse and drug use, and an overall discussion of his chronic atrial

fibrillation for more than twenty years.  (Tr. 202-03, 238-39.)  Walton's alleged evidence is not

"new" nor "material."  *See Allen*, 561 F.3d at 654 ("Allen had already presented this evidence to

the Appeals Council, which in turn [was subsequently rejected by the ALJ] as cumulative and not

material in his denial of Allen's motion to reopen, and the district court rejected the evidence as

not material.").

-17-

(3:09CV2869)

### 4. Dr. Hickey's April 13, 2009 Medical Report Does Not Justify a Sentence Six Remand

Walton avers that Dr. Hickey's April 13, 2009 report meets the requirements for a Sentence Six remand.  Walton highlights Dr. Hickey's discussion that Walton has "experienced tremors since his early 50s and that they have worsened over the years."  ECF No. 14 at 7-8. Walton claims that an "evaluation and confirmation of [his] tremors would have mitigated against ignoring this limitation and the EMG results would have explained [his] problems standing and walking."  ECF No. 14 at 17.  Dr. Hickey's EMG evaluation of Walton's lower extremities reported a "reduced conduction velocity consistent with demyelinative polyneuropathy . . . [and] [c]hronic neuropathic charges in distal muscles."  (Tr. 338.)  Dr. Hickey's EMG findings regarding Walton's upper extremities were overall "within normal limits."  (Tr. 339.)

While Dr. Hickey's 2009 EMB medical report on Walton's upper and lower extremities is arguably new evidence because the report did not exist at the time of the administrative proceeding, *Foster*, 279 F.3d at 357 (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)), the evidence is not "material" because it is not reasonably probable "that the ALJ would have rendered a different decision if the evidence had been available for consideration" because the Agency is required to assign the most weight "to opinions from [the claimant's] treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . . ."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. § 404.1527(d)(2); (Tr. 338, 339.)

The Commissioner argues that Walton's proffered evidence "does not establish a

-18-

(3:09CV2869)

'reasonable probability' that the ALJ would have reached a different conclusion on disability"

because the record already reflects some of the evidence.  ECF No. 16 at 18.  The record reflects

Dr. Kotlyarevsky's medical finding that "no tremor can be ap[p]reciated," on March 21, 2007.

(Tr. 200-201).  Unfortunately, the record before the Court is flawed and does not enable the

undersigned to determine whether the Commissioner's argument has merit.  As earlier discussed,

the ALJ's written opinion fails to reflect that the ALJ considered Dr. Kotlyarevsky's opinion.

This error undermines the Commissioner's argument and renders the Court unable to enter

judgment on whether there is a reasonable probability that, upon remand, the ALJ may reach a

different conclusion based upon a non-treating source.[8]

    Walton alleged good cause for failing to timely present Dr. Hickey's opinion--that "prior

to the hearing, there had been significant periods of time when the [he] did not have the finances

or health coverage to obtain medical care"--is not persuasive.  ECF No. 14 at 15.  Walton's

limited finances and lack of health insurance does not excuse his failure to timely either acquire

or present the evidence to the ALJ.  Walton was represented by counsel during the administrative

hearing before the ALJ and, overall, the record does not reflect the factors that would distinguish

him from the majority of near destitute claimants who timely submit medical evidence.  *Cf.*

*Grant v. Astrue*, No. 2:07-CV-344, 2008 WL 4059777, at *5 (S.D. Ohio Aug. 26, 2008) (finding

a confluence of problems including lack of counsel, mental impairment, and lack of education

excused the late production of evidence).

_____

    [8] A "nontreating source" (but examining source) has examined the claimant "but does
not have, or did not have, an ongoing treatment relationship with" her.  *Smith*, 482 F.3d at 875.

-19-

(3:09CV2869)

### 5. Dr. Maloney's June 8, 2009 Report Does not Satisfy the Sentence Six Remand Standard

Walton alleges that Dr. Maloney's assessment dated  June 8, 2009, over four months after the ALJ's decision, "would not have allowed [his] mental difficulties to be dismissed."  ECF No. 14 at 17.  Dr. Maloney's assessment reported that Walton "has a poor ability to respond to changes in a routine setting, relate to co-workers, interact with supervisors, deal with work stress, understand, remember, and carry out complex or detailed job instructions, relate predictably in social situations, and mange funds or schedules."  ECF No. 14 at 8.

 It is well established that a Sentence Six remand is not appropriate to consider evidence that a claimant's condition worsened after the administrative hearing.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992).  Walton seeks to admit evidence created over four months after the ALJ's adverse decision and nearly five years after his alleged onset date. The record reflects a 2005 report of Dr. Mehl wherein he opines  that Walton's mental health is normal.  (Tr. 110.)  As earlier discussed, the ALJ's written opinion fails to reflect that he considered Dr. Mehl's opinion.  This error renders the Court unable to enter judgment on whether there is a reasonable probability that, upon remand, the ALJ may reach a different conclusion based upon Dr. Mehl's medical findings made four years later.  Nevertheless, based upon the record upon review, Walton has failed to show that his "new" evidence is material to his condition at any time prior to the ALJ's decision.

### 6. Dr. Tinkel's July 10, 2009 Evidence is Largely Cumulative of the Record

Walton argues that Dr. Tinkel's assessment on July 10, 2009, supports a Sentence Six remand because Dr. Tinkel reported that Walton "continues to have issues with intermittent

(3:09CV2869)

headache[s], fatigue, chest pain, dyspnea, palpitations, and near syncope." ECF No. 14 at 8.

Dr. Tinkel's July 10, 2009, assessment is "largely cumulative of [Dr. Tinkel's] evidence
and opinions already present in the record." *Longworth*, 402 F.3d at 598. In August 2005,
Walton complained of "head rushes, chest paint, and lightheadedness," and tested positive for a
tilt table study for neurocardiogenic syncope. (Tr. 124.) In October 2008, Walton visited the
University of Toledo Medical Center complaining of palpitations, shortness of breath with
exertion, dyspnea, and "periodic" chest pain.[9] (Tr. 202, 204, 208.) Therefore, it is not probable
that Dr. Tinkel's evidence would have changed the outcome. Walton has failed to demonstrate
that he has met his burden.

### 7. Dr. Both's August 4, 2009 Evidence Does not Warrant a Sentence Six Remand

Walton argues that the following August 4, 2009, evidence warrants a Sentence Six
remand: (1) Dr. Both completed a "Medical Source Statement: Patient's Physical Capacity"
form stating that Walton is limited to "lifting 20 pounds on an occasional basis; standing,
walking, and sitting for 30 minutes at a time, up to 2 hours total; and to occasionally pushing,
pulling and performing gross manipulation . . . required extra rest periods, needed a sit/stand
option . . . [;]" and (2) Upon refiling a new application for Supplemental Security Income, the
Social Security Administration found Walton to be disabled for the period of disability filed on

---

[9] Notably, Walton argues that Dr. Tinkel's opinion explaining that Walton "should
qualify for full disability" is not material. ECF No. 14 at 8. Dr. Tinkel's opinion is not awarded
"any special significance" as such statements by physicians amounting to a disability
determination, opposed to a medical opinion, are reserved for the Commissioner. 20 C.F.R. §
404.1527(e)(1), (3)

(3:09CV2869)

March 3, 2009.  ECF No. 14 at 8-9.

Dr. Both's August 4, 2009, assessment is "largely cumulative of [Dr. Holbrook's] evidence and opinions already present in the record."  *Longworth*, 402 F.3d at 598.  On May 7, 2006, Dr. Holbrook reported that Walton was limited to:  (1) occasionally lift and/or carry 50 pounds; (2) frequently lift 25 pounds; (3) sit/stand for about 6 hours in an 8-hour day; and (4) push/pull unlimited, other than as shown for lift and/or carry.  (Tr. 155.)  Dr. Both's assessment is largely, although not exactly, cumulative of Dr. Holbrook's reported findings presently in the record.  Walton has failed to demonstrate that Dr. Both's evidence is material, and thus he has not met his burden.

### 8.  Subsequent Favorable Decision Does Not Warrant a Sentence Six Remand

Walton's claim that the "Social Security's new determination of disability serves to support the conclusion that this evidence is material and persuasive as to the issue of disability" is without merit.  The Sixth Circuit has held,

> A subsequent favorable decision alone, however, "as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence." *Allen v. Comm'r of Social Sec.*, 561 F.3d 646, 652-53 (6th Cir.2009) (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988)).

*Mazurkiewicz v. Comm'r of Soc. Sec.*, No. 3:09CV0167 2010 WL 1258094 at *6 (N.D. Ohio 2010).  Therefore, the Social Security Administration's "new determination of disability" is not material evidence requiring a Sentence Six remand.

### VI.  Conclusion

For the above reasons, the Court reverses the Agency's final decision denying Plaintiff

(3:09CV2869)

Jack Walton benefits and remanding the matter, pursuant to the Fourth Sentence of 42 U.S.C. §

405(g), for further consideration of medical opinion evidence regarding Jack Walton in a manner

consistent with this opinion.  Upon remand, the Agency is directed to give the appropriate

consideration to Walton's primary care physician, Dr. Mehl, and treating physician, Dr.

Kotlyarevsky.


IT IS SO ORDERED.


January 18, 2011                              s/ *Benita Y. Pearson*
Date                                         Benita Y. Pearson
                                             United States District Judge